Nancy SHOWELL and Randy Taylor,
Respondent Below, Appellants,

v.

DIVISION OF FAMILY SERVICES,
Petitioner Below, Appellee.

Nos. 452, 461, 2008.

Supreme Court of Delaware.

Submitted: March 4, 2009.
Decided: May 1, 2009.
Corrected: May 21, 2009.

Kelly J. Sasso, Wilmington, for appellant, Nancy Showell.

Joseph A. Gabay, Law Office of Joseph A. Gabay, Wilmington, for appellant Randy Taylor.

Victoria R. Witherell, Department of Justice, Wilmington, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

Nancy Showell and Randy Taylor appeal from a Family Court order terminating their parental rights in their two children. On appeal, these parents argue that the Division of Family Services failed to serve them with notice of the termination hearing and that the Family Court therefore

lacked jurisdiction to terminate their parental rights. Because we agree that the parents did not receive proper notice, we reverse the judgment of the Family Court and remand for further proceedings.

### FACT AND PROCEDURAL BACKGROUND

On May 2, 2007, Showell and Taylor brought their two minor children, Nila and Anna, to the Wilmington Hospital. They sought insulin to treat Nila's Type I Diabetes but had no money or other resources. The hospital staff alerted the Division of Family Services and a DFS worker responded to the scene and questioned the parents. The parents told that DFS worker that they last resided at a motel in Minnesota, were North Carolina residents, and that they recently lost their Medicaid benefits. The parents also stated that they were traveling to North Carolina and New York to obtain birth records, in an effort to have their Medicaid benefits reinstated.

The parents refused to give DFS an address or other reliable means of contact and provided only an inoperative Minnesota prepaid cell phone number. At some point, the DFS worker left the parents unattended. The parents fled the hospital with their two children, and without Nila receiving any insulin or medical care. The police eventually apprehended the parents, and DFS obtained emergency custody of the children.

Showell called DFS the next day, and learned that she needed to attend a preliminary protective hearing later that week. DFS instructed Showell how to set up a visit with her children. Although Showell refused to provide any other information, she did give DFS the address of a *Raleigh*, North Carolina P.O. Box where

she and Taylor received mail. The next day one of Showell's family members informed DFS that the parents had returned to North Carolina.

The parents appeared at the preliminary protective hearing on May 9, 2007.[1] After that hearing, Showell emailed her DFS caseworker several times. DFS emailed Showell the terms of her DFS case plan. In an April 2, 2008 email, Showell provided DFS with a *Wilson*, North Carolina address where she and Taylor currently resided.

A series of dependency hearings followed. Despite Showell's ongoing communications with DFS, neither parent attended any of those hearings or visited the children. On November 2, 2007, DFS filed a petition to terminate Showell and Taylor's parental rights. The Family Court scheduled a hearing for March 14, 2008. DFS sent notice of that hearing to the Raleigh P.O. Box that the parents originally provided as their mailing address. DFS also published notice in *The Charlotte Observer*, a *Charlotte*, North Carolina newspaper.

On March 14, 2008, the Family Court attempted to hold a hearing concerning the termination petition. After waiting approximately forty minutes for the parents to arrive, the court discharged their attorneys. About twenty minutes later, the parents arrived. The court telephoned the parents' attorneys, who agreed to return and proceed with the hearing. While waiting for counsel and for reasons not in the record, the parents created a disturbance that required the Capitol Police to remove the parents from the courthouse. The Family Court then rescheduled the hearing for August 12, 2008.

1. A court appointed attorney represented Showell, and the Family Court informed Taylor that it would also appoint an attorney to represent him.

The Family Court published notice of that rescheduled hearing in *The Wilmington News Journal* (but not *The Charlotte Observer* or any other publication). The parents did not appear at that hearing and the Family Court entered an order terminating their parental rights. The parents appeal from that order.

## DISCUSSION

On appeal, the parents argue that DFS did not adequately notify them of the petition for termination of their parental rights. They argue that they did not receive adequate notice because: (1) a petition for the termination of parental rights is a new proceeding that is not covered by any earlier notice; (2) DFS knew of their address in Wilson, North Carolina and did not mail notice to that address; and (3) DFS published the notice in a Charlotte newspaper but neither in a Raleigh nor a Wilson, North Carolina newspaper.

DFS responds that the parents received sufficient notice for three independent reasons: (1) it published the notice in *The Charlotte Observer*; (2) it mailed the notice to the parents' Raleigh P.O. Box; and (3) the parents' "appearance" at the March 14, 2008 termination proceeding subjected them to the jurisdiction of the Family Court.

■ On appeal from a termination of parental rights, we review the legal determinations of the Family Court *de novo*.[2] Family Court Civil Rule 4 generally controls service of process in the Family Court. Specifically, 13 *Del. C.* § 1107A describes the notice requirements for termination proceedings, as follows:

(a) Notice of the time, place and purpose of the hearing shall be served upon the parent or parents, person or persons or organization holding parental rights at the respondent's last known address or to the address recited in the petition. (f) If the Court shall find that personal service within the State cannot be accomplished upon the parent or parents, person or persons or organization holding parental rights, the Court shall then cause notice of the time, place and purpose of the hearing to be published once a week, for 3 successive weeks, in such newspaper of the county, 1 or more, as the Court may judge best for giving the parent or parents, or person or persons or organization holding parental rights notice, the formal wording of said notice to be approved by the Court. Publication shall also be made in the locality in which the parent or parents, person or persons or organization holding parental rights is believed to be located if different from the county where the publication just described has been caused. The Court may, upon request by the petitioner, order that personal service and publication occur simultaneously.

(g) If any publication is ordered pursuant to subsection (f) of this section, the Court shall also order that the Clerk of the Court, at least 3 weeks prior to the hearing, send by regular and registered or certified mail to the parent or parents or person or persons or organization holding parental rights, at the address or addresses given in the petition, a copy of the same notice, or a similar notice of the time, place and purpose of the hearing.

## I. The Notice by Publication and Mail Were Defective

■ The parties' arguments are straightforward. The parents argue that

---

**2.** *In re Heller,* 669 A.2d 25, 29 (Del.1995) (citing *In re Stevens,* 652 A.2d 18, 23 (Del. 1995)).

the attempts to serve them with notice of the termination hearing by publication and mail were deficient. DFS argues that the parents received adequate and proper notice.

To provide notice to a party who cannot be personally served, *both* notice by publication *and* by mail are necessary.[3] Although the parents had notice of the ongoing dependency hearings, the petition to terminate their parental rights was a new proceeding that required new notice under 13 *Del. C.* § 1107. The parents were North Carolina residents who were present in that state and could not be personally served in Delaware. Therefore, under 13 *Del. C.* § 1107A(f), notice of the termination proceeding was required to be published once a week for three weeks in "such newspaper of the county, 1 or more, as the Court may judge best for giving the parent ... notice.... Publication shall also be made in the locality in which the parent ... is believed to be located if different from the county where the publication just described has [occurred]."

Whether the parents were given adequate notice turns on whether publishing in *The Charlotte Observer* properly complied with the statute.[4] That newspaper publishes from the City of Charlotte, North Carolina, in Mecklenburg County. DFS had two North Carolina addresses

for the parents, one in Raleigh (in Wake County), North Carolina's capital, and one in Wilson. We need not decide whether Raleigh or Wilson would have been the proper place of publication because in no event would publication in a Charlotte newspaper be likely to provide notice and therefore be proper.

The notice by mailing provisions within 13 *Del. C.* § 1107A(g) only apply when there is proper publication. Therefore, we need not reach the issue of whether the parents were properly served by mail. Because DFS did not publish notice of the termination proceeding in the appropriate locality, the parents did not receive proper notice.

## II. The Parents Did Not Enter an Appearance in the Family Court and Submit to That Court's Jurisdiction

■ DFS claims that the parents submitted to the Family Court's personal jurisdiction by "appearing" at the March 20, 2008 termination hearing. Having submitted to that court's jurisdiction, DFS argues, the parents cannot now claim that they did not receive notice of the rescheduled termination hearing. The parents did not file a reply brief, nor did they address this argument in their opening brief.

DFS relies on a federal case to support its position that an appearance in court is tantamount to personal service of process,[5]

3. *See* 13 *Del. C.* § 1107A(g). It appears unlikely that the statute contemplated "county" to apply beyond Delaware's three.

4. Although notice was published in the *Wilmington News Journal*, DFS concedes that that publication was only to provide notice to any unknown father. The record does not disclose the geographical scope of *The Charlotte Observer*. Further, the record does not indicate whether DFS knew that there are: (1) two Wilson North Carolina[s] each with their own newspapers (Wilson, Wilson County, the *Wilson Daily Times*, eastern North Carolina, 216 miles from Charlotte; and, Wil-

son, Buncombe County, 9 miles from Ashville and the *Citizen Times* and *Mountain Xpress* newspapers and 121 miles from Charlotte. Only with genuine difficulty could DFS have selected a major newspaper less likely to provide proper notice within North Carolina; and, (2) that the *Raleigh News and Observer* disseminates throughout Central and Eastern North Carolina (including Wilson, Wilson County)).

5. *See S.M.W. Seiko, Inc. v. Howard Concrete Pumping, Co., Inc.*, 170 F.Supp. 2d 152 (Dist. N.H.2001).

which DFS implies would fulfill the notice requirements for a termination proceeding under 13 *Del. C.* § 1107A(h). That argument lacks merit. DFS confuses the act of physically appearing in court with the legal act of entering a formal appearance in court. Although the parents physically arrived in the courthouse, their late arrival and apparent conflict with the capital police prevented the hearing from occurring. The parents did not enter a legal appearance before the Family Court, and thus did not submit to the Family Court's personal jurisdiction.

DFS suggests that, because the parents arrived at the courthouse, their actual knowledge of the hearing bars them from arguing that their notice was defective. That argument fails because a party's actual knowledge of a lawsuit does not excuse a failure to give statutorily mandated notice.[6]

Because DFS did not publish the statutorily required notice in the correct county or locality and because the parents did not enter a legal appearance in the Family Court, that court lacked jurisdiction to terminate the parents' rights in their children.

### *CONCLUSION*

For the foregoing reasons, we RE-VERSE the judgment of the Family Court terminating Showell and Taylor's parental rights. The case is REMANDED to the Family Court for proceedings consistent with this Opinion. Should a basis for termination of parental rights develop thereafter, DFS may then proceed accordingly.

**6.** *See Assist Stock Management LLC v. Rosheim* 753 A.2d 974, 982 (Del.Ch.2000) (holding that failure to comply with the service requirements of 6 *Del. C.* § 18–109—on serving the managers of LLCs—kept the court from having personal jurisdiction over the defendant, even if he had actual knowledge of the lawsuit).